Good afternoon and may it please the court. My name is Corey Webster and here with me off screen is my co-counsel James Azadian of my firm and we represent the appellant Gagik Gevorkyan. I'd like to reserve five minutes for rebuttal. I've got a timer that I've started myself too so hopefully I can keep track as well. You're probably And my timer is pretty much right on with Judge Collins. I'd like, I want to start with a matter of first principles here. This court, like every court in this nation, is loathed to cases being decided other than on their merits. Default was entered here while Mr. Gevorkyan was out of the country caring for his sick mother and reasonably relying on assurances from his codefendant that everything was fine in the litigation. Well, you know, that's one side of the story, but the district court found, as a fact, that the default was deliberate and willful conduct that was designed to impede the action. And it wasn't just being out of town. Your client didn't pay their lawyers, they didn't answer discovery requests, including written interrogatories, they didn't show up at depositions. It wasn't just a one-time problem. Do we have any obligation to defer to those sort of factual glosses and findings by the district court? No, Your Honor, you don't. And the case for that is, the original case for that is Falk versus Allen, in which this court said, quote, this court will accept the allegations of the movement's factual statement. So you think that the district court had to believe whatever story he said, no matter how incredible, if he said I was, you know, up in Canada taking photographs of Bigfoot, he had to believe that? I was abducted by aliens on Lake Michigan. Certainly, if there's something where there's something that's so implausible, that there's no way it could possibly be true. Could you say, excuse me, where are we on the clock now? Where should it be? I'm at 12 and a half. Okay, so whoever's dealing with it, put us there. And that's good. All right, keep going. Okay. So I apologize for getting sidetracked here. The district court necessarily disbelieved the explanation, but the explanation given was plausible on its face. But it was only about part of it. That's part of my issue with this. Even the explanation doesn't explain everything. Yes, actually, Your Honor, it does explain everything. The explanation given is that he was out of the country, he was relying on his co-defendant's assurances that everything was fine. He was not aware of the discovery that had been served. He was not aware that his attorney had withdrawn until he returned from the country in December, returned to the country in December. And at that point, he immediately contacted his co-defendant to find out what was going on, and immediately re-engaged counsel, who promptly prepared and filed the motion, the Rule 55C motion. This court has interpreted Falk v. Allen, the statement I quoted before, as meaning that the court on review is required to accept the movement's allegations. It's applied that in a case called the Reno v. Syringa General Hospital, a 2002 decision. In the case that it cites, the Stone case is talking about taking as true the presentation that's made in assessing meritoriousness. The notion that Falk, where there was no challenge to the credibility of the showing on whether he was being willful, the notion that we have to take as true whatever he claimed and the district court couldn't question that, that doesn't seem to be what Falk says. It's possible that it's not what the other case said, but it unquestionably is what Falk said, because if we look at the language from Falk, the court was not addressing the other factor. It was addressing specifically culpability and assessing whether the movement... Is anyone contesting the presentation as to culpability in that case or its veracity? Well, the district court found against the movement, so whether the motion was opposed, I mean, in that sense, yes, just like... I mean, you may question the adequacy of it, but the veracity of it. You're claiming Falk said the district court had to accept the veracity of this without question, and that seems an extraordinary proposition. Well, it's not really extraordinary, and it is actually based on the fundamental principle embedded within Rule 55C and Rule 60B of favoring cases being decided on their merits, and that the consequences... Even if the district judge thinks that he thought here that your client was lying, he has to go along with that? Correct, so long as the allegation is plausible. It's comparable to assessing an allegation on its face for, say, a motion, a 12B6 motion. A judge could think that, hey, I don't think you're going to... I think that what you're alleging is incorrect, but if it's plausible on its face... The culpability issue is going to drop out of the case if the motion is granted. Then you're going to go on to litigation merits, but if the default gets set aside, culpability is out, and that's why I think this reading of Falk is so extraordinary. It says that on the issue of culpability, you have to take their word. But it isn't just in Falk, though, Your Honor. In both TCI group and the case that's referred to in the briefs as MESLI, this court applied that. In both of those cases, the district court found the party to be culpable, and in reviewing it, that issue, this court did not give any deference to the district court's conclusion. Its analysis of the culpability factor did not suggest in any way that it involves any factual findings. Instead, what this court did is it determined whether that explanation given is inconsistent with deviousness and bad faith. Well, why wouldn't we find that on these facts? Let's assume for the moment your argument as it relates to what the standard is regarding plausible. It still seems as an argument that what your client asserted was not plausible, given the issue of the repeated incidents. It seems to me that you could make the argument about plausibility about one or two of these particular failures. But the issue is, as it was with MESLI, was a pattern of culpable conduct. So why wouldn't we, in adopting or accepting even a broader reading, because I agree with Judge Collins, I don't believe that it's that broad, but even accepting a broader reading than we might otherwise as it relates to accepting this information, why wouldn't we still then find here that it isn't plausible or believable, given the repeated pattern? Your Honor, I actually think that characterizing Mr. Gavorkian here as a serial offender is not actually fair given the context and also distracts from the actual legal standard. Although Mr. Gavorkian missed more than one litigation obligation, this all happened while he was out of the country and under the reasonable yet mistaken belief that his attorney was still representing his interests and everything was fine in the litigation. His explanation thus accounts for the missed obligations. I think a hypothetical, if the court will indulge me here, will show what I'm talking about here. I think you're misunderstanding my question. Our role is not necessarily to go back in the first instance to assess this. The question is, in terms of the district court judge's determination, right, about the plausibility and looking at that, why wouldn't we say, okay, that was plausible in the context of what were these repeated incidents? Well, because what's being assessed here is not, are there repeated incidents? It's, is the explanation for them plausible? And the explanation for them fully accounts for them because he explained that he was not aware that the discovery had been served. He was out of the country when the default was entered. He was, he stated that he was relying on assurances from his co-defendant that nothing was wrong. He didn't get wind of something being wrong until he returned to the country. Now, the court can certainly find blame and can find faults, neglect, but those, that's inherent in all of these cases. The point of Rule 55C and Rule 60B is that the consequences of neglect or carelessness give result from, or sorry, cause that you can get, you should set aside the default when it's, because it's not deviousness or bad faith. That's the standard. It's between those, it's deviousness does not, and if your excuse does not, is not consistent or is consistent with deviousness, then you should not be granted relief. But if on the other hand, it's just merely shows carelessness, it's not. And this court's decision, I want to point to in United States versus Bateman, and there the court granted relief, the district court had entered summary judgment by default because the attorney was out of the country without notifying the court when the opposition deadline came for summary judgment. The court entered judgment by default and refused to set aside the default. In reversing, this court acknowledged that the excuse given was admittedly weak, but despite being weak and despite carrying on in the opinion about explaining why the neglect showed a lack of disregard for the court's docket, the court said that reflects carelessness, not bad faith. And the court reversed. You're down to about three minutes and change if you wanted to save some time for rebuttal. Yes, I'd like to do that. Thank you, Your Honor. And we will now hear from the appellee. Good afternoon. Yes, good afternoon, Your Honors, and may it please the court. I'm Cardiff Kirkconian appearing on behalf of the appellee, Pierre Achillean. Thank you for the opportunity to appear before you. We're asking this court to affirm the judgment. The record reflects the efforts and findings of a veteran district court judge who provided the relevant rulings that you've been asked to review. What is in this record reflects a very patient judge whose orders were unheeded, whose schedules were disregarded, and whose case management efforts were ignored repeatedly. It is true that the court generally favors deciding cases on the merits. There's no question about that. However, a defendant can forfeit that right. He can forfeit the right to have a matter decided on the merits, and defendant has done that here. By his own actions, appellant has made it impossible for the district court to manage its documents. As a matter of fact, appellant absented himself from participating in this case to such a degree that his own lawyers filed a motion to withdraw in the middle of litigation. District courts don't easily grant motions to withdraw by a defense attorney in the middle of a case. But here, the court granted that motion to withdraw because it agreed with the reasons for the withdrawal. Appellant's own attorney stated in the motion to withdraw that appellant had failed to cooperate with the firm in preparation and conduct of this matter. The appellant was uncooperative. In granting the motion to withdraw, the district court agreed with appellant's own counsel that appellant had, I'm quoting, failed to communicate with, bracketed his lawyers, and failed to cooperate in the preparation of the defense. Allowing the withdrawal, the district court found that appellant's failure to communicate and cooperate with his lawyers has, and I'm quoting, harmed the administration of justice in this case. That was August 2018. Did the district court have distinguished between the two defendants, Norian and the other appellant here? I mean, Norian didn't appeal on the appellant here. Thank you, Judge Collins, for that question. As you can see from the orders themselves, the court refers specifically to the conduct of Gavorkian in this determination. And the facts that we're recounting regarding the court's decision reflect Gavorkian's specific conduct. And I can recite some of that for the court, Your Honor. And I guess it relates to appellant's argument that all that appellant did was fail to appear for one pretrial conference. It's just not true on the record. The appellant here, Gavorkian, is a sophisticated businessman living in California with global business interests. He appeared and was in the country and represented in this matter by an attorney, Mr. Vorosian, when in February 2018, the district court set the discovery cutoff date of August 7, 2018, a pretrial conference date of August 29, 2018, and a trial date of November 13, 2018. Mr. Gavorkian was represented by Mr. Vorosian at the time. Plaintiff's counsel issued interrogatories, document requests, and noticed Mr. Gavorkian's deposition. Mr. Gavorkian was still represented by Mr. Vorosian, but Mr. Gavorkian ignored the interrogatories, ignored the document requests, and failed to appear for his deposition. Appellant also failed to appear at a scheduled mediation on August 2, 2018. And it's important that Mr. Gavorkian was represented by Mr. Vorosian both when these deadlines were set and through the date of the deadlines themselves. And it's important that Mr. Gavorkian was in the country when his counsel wrote to him in June 2018, telling him that he would have to withdraw if Appellant did not cooperate. He was in the country, Mr. Gavorkian was, when his counsel filed the motion to withdraw in July 2018. And Mr. Gavorkian was also in the country when the court granted his counsel's motion to withdraw on August 7, 2018. It is at that point, Your Honors, that Appellant chose not to obtain new counsel or even to communicate with plaintiff's counsel. He ignored our emails and mails. He made no arrangements to follow the case, even though he knew that a pretrial and a trial were just around the corner. We posit, Your Honor, that Mr. Gavorkian abandoned the case willfully. He literally got on a plane and left the country. It is telling as well that the motion to set aside the default judgment was filed by the same attorney, Mr. Vorosian, who had just withdrawn three or four months earlier. Mr. Gavorkian claims that he did not get notices, that he doesn't speak English, although it's clear that his declaration is in English and it doesn't indicate that it was translated, and that he did not have his co-defendant to tell him what to do. Yet somehow he was able to receive the default order, rehire the same lawyer who had just withdrawn. He also was somehow able to cooperate with that lawyer, Mr. Vorosian, in filing the motion to set aside default judgment. The District Court has the right to consider the total conduct of the defendant in arriving at his decision to enter default judgment. This is reflected in the standard of review and the factual record here supports the District Court's entry of default judgment. Appellant has posited many excuses. However, Mr. Gavorkian knew that he had a pending litigation in the United States federal court. He claims to have relied on his friend, the co-defendant, but Mr. Gavorkian cannot delegate the non-delegable to his friend. He could only answer the discovery propounded on him and only he could sit for his own deposition, for example. Mr. Gavorkian knew exactly what he was doing. After ignoring the deadlines of the District Court, not communicating with his own lawyers, and then flouting plaintiff's counsel too, Mr. Gavorkian simply absented himself and only resurfaced, rehiring the same lawyer when judgment was entered against him. This, we believe, is gamesmanship. If I may, I'd like to also discuss very briefly the amount of damages awarded by the District Court. With respect to compensatory damages, the District Court considered the evidence before and found Appellant's false statements in the newsletters and has engineered expulsion of Appellee from a Global Jewelers Association Board that had left Appellee, and I'm quoting, in extreme distress, embarrassment, and humiliation, and that Appellant had, quote, irreversibly damaged Appellee's reputation. As agreed by the District Court, a jeweler's reputation for honesty is the cornerstone of a successful business. Appellant took that so globally. The damages here are based on more than just the complaint. The motion for default was accompanied by a declaration of Appellee as well as four additional declarations with their own exhibits. And the District Court awarded Appellee punitive damages at a one-to-one ratio. It did so on the basis of admitted allegations and evidence. It found that the punitive damages are awarded when the defendant acts with malice to injure, annoy, vex, or in conscious disregard. That one-to-one ratio, Your Honors, is well within the permissible range. Indeed, the court, this court, has held that a ratio of four-to-one is a good proxy for the limits of constitutionality. In fact, this court has held ratios as high as 28-to-one, especially where the injury is personal. It is also important to note that the District Court denied Appellee's motion for sanctions. It's important, Mr. Gaworkin didn't raise any serious contest to the amount of damages in opposition to Appellee's motion for default judgment, other than to say it was astoundingly high. And the District Court here noted that defendants have not identified specific issues with plaintiff's request, nor have they proposed any different amount. Before I conclude, Your Honors, I'd be pleased to answer any remaining questions you may have. None for me. I don't believe we have any additional questions. Okay. Appellant is basically asking this court to set a precedent that litigants, not the actual District Court, are in charge of managing the federal court docket. Appellant snubbed his nose at the District Court's authority and decided himself to manage the litigation docket. Litigants do not get to decide how the court's docket is managed. If the appellant is allowed to succeed on this appeal, it would make a mockery of the case management and proceedings. After this District Court's detailed findings and reasoning, a reversal would be an open invitation to disregard and to game the federal court's ability to manage its docket. That would be an outcome that would reverberate systemically and upend the efficient and timely prosecution of cases within the circuit. The District Court made a detailed decision, and its burden, in fact a high burden, of the appellant to persuade this court is for the sufficient to support that decision. But this record contains ample evidence, including appellant's own lawyer's statements, allowing this District Court to come to the conclusion that it did. I respectfully request that this honorable court affirm the judgment of the District Court and dismiss the appeal. Thank you very much for the opportunity to appear. Thank you. I believe there is a bit of rebuttal time remaining. You're muted. You're muted. You need to turn your microphone on. Apologize, Your Honors. I'd like to make three quick points if I have time to get through all of them. There's an argument made that there's repeated violations going on of court's orders. I want us to be clear about something. There was no prior orders going on. The only order we refer to is just the scheduling order that set the deadline for discovery. That same order says, instructed the parties, do not serve written discovery so that it's due right before discovery. Otherwise, you won't have a chance for a motion if needed. Do not serve or notice depositions right before discovery closes because you won't have time if you need to move and bring a motion. I bring this up to point out that that's what happened here. Discovery was so backloaded there that there wasn't really time to bring any motions. And so what then happens is a District Court, which certainly has discretion to address problems in discovery, but what happened here was sua sponte without notice, the court said, your answer is stricken and I'm entering default. The rules of civil procedure provide the District Court with authority to address discovery in a certain way. Rule 37 in particular allows a party to bring a motion to compel. That can then result in an order that compels someone to sit for a deposition, to answer certain questions, to respond to written discovery. And if there is an order compelling in place and a party thinks that that order has been violated, a motion can be brought for sanctions. In effect, what happened here is all of that was short circuited by the court sua sponte and without notice, just deciding at that hearing that the default would be entered. Well, in between that, the attorney withdrew after expressing exasperation that he wasn't getting paid and they weren't cooperating. And so he kind of gave up on trying to get that former client to cooperate in the process. Well, it wasn't between that. It was before that he moved to withdraw and actually withdrew and the court allowed him to withdraw at the end of July. Before the subject of default came up, correct? Correct, yes. He withdrew after there was a failure to show up for the deposition, is that correct? No, that's not correct. He withdrew before. The deposition was after he withdrew? That's right. The motion to withdraw was filed in either late June or early July and the deposition was set for July 30th, which was one week. Was the motion granted after the deposition was scheduled? I don't recall. It might have been the same day. It was one way or the other, but within days of each other. The district court relieved him at the time the deposition was supposed to occur? I don't recall that specifically, but what matters here is that he gave an explanation. Mr. Borgen gave an explanation that he was never told that he had the deposition. And to what extent, counsel, should we be permitted to consider on the motion to withdraw his attorney's representations about his conduct? Because you're talking about the extent to which the court should accept certain representations he's made, but can't we also consider what the representations are from his attorney about his conduct? Can we not take that into consideration in evaluating this? I see that my time is up. Can I answer the question? Please answer the question. Yes, certainly you can consider that, but I would hope that the court would consider in the context of this same attorney recognizing as of December that the mishap that had occurred and represented to the court through Mr. Borgen's filings in December, that there had been a misunderstanding. The explanation was given in December by that same communication, but then in December when it was all cleared up, he came back and stood behind the representations that Mr. Borgen made explaining the situation. Thank you, counsel. The case just argued is submitted and we appreciate very much the arguments that both of you have presented. Thank you, your honors. Thank you, your honors.
judges: Graber, Boulware, Collins